UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANETTE Y. SAMS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO and BARBARA HEMMERLING,<br><br>Defendants. | No. 13 CV 7625<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Jeanette Sams is an African-American woman, and a Chicago police officer. Illness required her to take medical leave, but she recovered and by March 2011 she was fit to work. Upon her return she asked to be transferred from the Alternate Response unit to the Medical unit, because the culture of the Alternate Response unit could have exacerbated her condition. The director of the Medical unit, Barbara Hemmerling, refused. Hemmerling placed Sams on unpaid leave, without her consent. Sams believes that decision was motivated by her race and disability. In March 2012, Sams asked to be reinstated, but was turned down—purportedly because of her medical condition, even though she was fit to work.

Sams filed a charge of discrimination with the Equal Employment Opportunity Commission, and then brought this lawsuit. She asserts claims under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. Defendants—the City of Chicago and Hemmerling—move to dismiss

on a number of grounds. For the reasons discussed below, that motion is granted in part and denied in part.

I.  **Legal Standards**

Defendants' motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. I therefore construe the complaint in the light most favorable to Sams, accept as true all well-pleaded facts, and draw reasonable inferences in her favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Rule 12(b)(6) limits my consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Defendants' motion is based in part on applicable statutes of limitations. "A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

II. **Facts**[1]

Sams is an African-American woman, who became a police officer in 1991. TAC at 7, ¶ 1. Between 2005 and 2008, she suffered a series of strokes, which left her disabled. TAC at 7, ¶ 1. As a result, she took medical leave between June 2005

---

[1] The facts are taken from the third amended complaint [36], which is cited as "TAC."

and May 2010. TAC at 7, ¶ 1. While on leave, she was retrained to do office work (she participated in speech therapy, cognitive therapy, occupational therapy, and physical therapy). TAC at 7, ¶ 1.

In 2010, Sams asked to return to work. TAC at 7, ¶ 2. According to both her own doctor and the City's doctor, she was fit to return to work, on limited duty. TAC at 7, ¶ 2. In January 2011, she was reinstated as a limited-duty police officer. TAC at 7, ¶ 2. The City wanted her to return to the Alternate Response unit, where she worked before her first stroke. TAC at 7, ¶ 2. Sams asked instead to be placed in the Medical unit. TAC at 7, ¶ 2. Her reasons were (1) the Medical unit was appropriate, given the retraining she had received; and (2) her doctor feared that the loud, combative, poorly supervised Alternate Response unit could exacerbate her disabilities, and he therefore recommended that she not return there. TAC at 7, ¶ 2.

The Chief of Patrol granted Sams's transfer request, though he asked for a letter from her doctor explaining the need. TAC at 7, ¶ 3. Sams obtained that letter, and the director of the Medical unit (Hemmerling[2]) read it. TAC at 7, ¶ 3. Upon reading the letter, Hemmerling stated that she did not want Sams in the Medical unit. TAC at 7, ¶ 3. Hemmerling threatened to make certain that Sams was put on

---

[2] The third amended complaint does not explicitly allege that Hemmerling is the referenced director of the Medical unit. But Sams made that clear in open court, with counsel for Hemmerling present. [43] at 5. Defendants' brief [48] and Sams's brief [55] show that the parties are aware of Hemmerling's alleged role.

leave unless Sams returned to the Alternate Response unit. TAC at 7, ¶ 3. Sams refused.[3] TAC at 7, ¶ 3.

Around March 3, 2011, Hemmerling filled out paperwork stating that Sams was unfit to work. TAC at 7, ¶ 3.[4] That statement conflicted with the views of both Sams's doctor, and the City's doctor. TAC at 7, ¶ 3. Without Sams's consent, Hemmerling placed Sams on personal leave, and later converted that to medical leave. TAC at 7, ¶ 3.[5] In violation of City policy, Hemmerling placed Sams on medical leave without obtaining a doctor's opinion that Sams was unfit to work. TAC at 7, ¶ 3. In addition to Sams, Hemmerling (who is white) blocked another disabled African-American officer from working in the Medical unit. TAC at 7, ¶ 3. Hemmerling filled the relevant positions with two white officers, who had less seniority than Sams. TAC at 7, ¶ 3.

One year later, around March 12, 2012, Sams asked to return to work, but was told that she could not return due to her medical status. TAC at 7, ¶ 3; TAC at 9. Though the City had no medical justification for preventing Sams's return, Sams remained off work on unpaid medical leave, through the time she filed the third

---

[3] Sams says that when she refused, she cited her "accommodation." TAC at 7, ¶ 3. It is not clear whether this means her doctor's recommendation, the Chief of Patrol's decision to grant her transfer request, both, or something else.

[4] Sams clarified the time period for this allegation in open court. [43] at 5–6.

[5] In her response brief, though not in her complaint, Sams states that Hemmerling falsely reported that Sams had asked to go on leave. [55] at 3. Two letters from the City, which Sams attached to her response brief, appear contradictory on this issue—a March 15, 2011, letter states that Sams requested a leave of absence ([55] Ex. I) but a March 16, 2012, letter states that Sams refused to take a leave of absence ([55] Ex. J). These letters were not referred to in the complaint, nor are they central to it, so I do not consider them in resolving the present motion.

4

amended complaint. TAC at 7, ¶ 3; *see also* TAC ¶ 12(h). As a result, Sams has lost income and insurance coverage. TAC ¶ 12(h). She was therefore unable to afford her medications, putting her at greater risk for additional harm. TAC ¶ 12(h).[6]

On March 23, 2012, Sams filed a charge with the EEOC, alleging racial and disability-based discrimination. TAC ¶ 7.1; TAC at 9. Sams received a right-to-sue notice from the EEOC on July 27, 2013. TAC ¶ 8; TAC at 8. She filed the present suit on October 24, 2013. *See* [1]. Sams asserts claims for unlawful discrimination under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. She also claims that defendants unlawfully retaliated against her for asserting her rights under those statutes.

### III. Analysis

#### A. Adequacy of Allegations Concerning Retaliation

Sams used the form complaint for employment discrimination actions, provided on this district court's website.[7] She checked a box indicating that she alleges that defendants unlawfully retaliated against her for asserting her rights under various employment statutes. TAC ¶ 12(g). Defendants move to dismiss the retaliation claim, arguing that nothing in Sams's complaint or EEOC charge is relevant to a claim of retaliation. A plaintiff may not bring claims in federal court under Title VII or the ADA if those claims were not included in (or are not

---

[6] In her response brief, though not in her complaint, Sams states that she needed to work through June 15, 2011, in order to receive her pension, and that the City's actions complained of in this suit prevented her from doing so. [55] at 5.

[7] *See* http://www.ilnd.uscourts.gov/home/PUBLIC/Forms/empdiscrcmpt.pdf (accessed November 24, 2014).

5

reasonably related to and growing out of) the charges made to the EEOC. *See, e.g.*, *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256–57 (7th Cir. 2011). Nor may a plaintiff amend her complaint through her response brief. *See Smith v. Union Pac. R.R. Co.*, 474 Fed.Appx. 478, 480 (7th Cir. 2012); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Comp.*, 631 F.3d 436, 448 (7th Cir. 2011).

Sams does not respond to defendants' argument—meaning she does not point to anything in her complaint or EEOC charge concerning retaliation. Instead she makes new allegations: that the City improperly gave her personal information to her creditors. [55] at 2–4. Such allegations are independent of those found in her complaint and EEOC charge. Accordingly, Sams has not stated a retaliation claim.

### B. Timeliness of EEOC Charge

Before an Illinois plaintiff can bring a Title VII or ADA suit in federal court, she must file a charge of discrimination with the EEOC, and in the normal case must do so within 300 days of the unlawful employment practice. *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (2004). The parties dispute whether Sams's EEOC charge was timely. The key factual events are that Sams (1) was involuntarily placed on unpaid leave around March 3, 2011; (2) was denied a return to work around March 12, 2012; and (3) filed her EEOC charge on March 23, 2012.

#### 1. March 2011 Placement on Unpaid Leave

Being involuntarily placed on unpaid leave is an adverse employment action that, if done for discriminatory reasons, supports a claim of unlawful discrimination. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012). Naturally, and as confirmed by Sams in open court ([43] at 5–6), she was

6

aware of this injury right when it happened. Defendants therefore contend that the 300-day limitations period began running in March 2011. Sams argues that the clock did not start running until she discovered certain "new information" in March 2012. [55] at 1–2. Sams's argument is misplaced: a claim accrues—so the limitations period begins—when the plaintiff discovers that she has been injured. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). It does not matter whether she immediately suspects that her injury was unlawful. *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995). Accordingly, for being placed on unpaid leave, the 300-day limitations period began in March 2011.

But Sams's "new information" is not entirely irrelevant, because under the doctrine of equitable tolling, "[a] plaintiff may toll the statute of limitations if, despite all due diligence, he is unable to obtain enough information to conclude that he may have a discrimination claim." *Id*. at 268; *Cada*, 920 F.2d at 451. In *Cada* and *Thelen*, the Seventh Circuit suggested that the limitations period is tolled for age-discrimination plaintiffs who (naturally) were immediately aware that they had been fired, but not that had been replaced by younger workers. *Thelen*, 64 F.3d at 268; *Cada*, 920 F.2d at 451–52. Under the right circumstances, equitable tolling could make an EEOC charge brought in March 2012 timely, even where it is based on an injury the plaintiff was aware of in March 2011.

Sams, however, has not clearly invoked equitable tolling or shown that she may be entitled to its application. Sams says that in March 2012, the City's director of Human Resources informed her that she was ineligible to return to work for

7

"medical reasons." [55] at 1; TAC at 7, ¶ 3. Sams contends that this is when she realized she may have a discrimination claim. [55] at 1–2. Unlike the plaintiffs in *Cada* and *Thelen*, it is not clear why the new information would have caused Sams to believe, any more than she already did, that she had been the victim of discrimination. In her complaint, Sams alleges that she was perfectly fit to work, and that she knew in March 2011 that there was no justification for placing her on leave. TAC at 7, ¶ 3. So whatever the City's stated justification for placing her on leave, Sams should have known in March 2011 that it was bogus. The relevance of learning that the City cited "medical reasons" is unclear, and unexplained by Sams.

Further, equitable estoppel requires that Sams have exercised all due diligence. Nowhere does Sams say what she did between March 2011 and March 2012 to determine the reason (or stated reason) that she was placed on leave. And Sams has at least suggested that she knew in March 2011 that the City's stated reason would be that Sams was "unfit to work." *See, e.g.*, TAC at 7, ¶ 3; [43] at 5. In all, even reading the complaint and response brief liberally, I cannot reasonably infer that Sams lacked sufficient information to sue in March 2011, diligently pursued that information, but did not receive it until March 2012.

Because Sams did not file her EEOC charge until more than 300 days after being placed on unpaid leave, and there is no reason to toll the limitations period, Sams cannot now bring a Title VII or ADA claim in federal court based on that incident.

### 2. March 2012 Refusal to Reinstate

Sams also complains about an incident in March 2012, when she asked to be reinstated but was turned down. TAC at 7, ¶ 3; TAC at 9. Defendants say that Sams was "merely re-requesting the previously-denied accommodation" and that a "refusal to reverse the employment decision . . . is neither a fresh act of discrimination nor a continuing violation." [48] at 8. Defendants therefore argue that Sams's March 2012 allegations are "insufficient to transform her untimely claims into timely ones." [48] at 8.

Defendants are correct that Sams has not alleged a continuing violation, which is a type of violation—occurring for example in cases concerning hostile work environments—in which the cumulative effect of repeated acts constitutes a single actionable employment practice. *See AMTRAK v. Morgan*, 536 U.S. 101, 115 (2002). Other than that, defendants' arguments miss the mark. The question is not whether the March 2012 allegations "transform" the untimely March 2011 claim into a timely one; it is whether the March 2012 allegations themselves state a claim for discrimination. *See Lewis v. City of Chicago*, 560 U.S. 205, 211 (2010) ("Setting aside the first round of selection in May 1996, which all agree is beyond the cutoff, no one disputes that the conduct petitioners challenge occurred within the charging period. The real question, then, is not whether a claim predicated on that conduct is *timely*, but whether the practice thus defined can be the basis for a disparate-impact claim *at all*.") (emphasis in original).

The March 2012 refusal to reinstate Sams, after her request for reinstatement, is a discrete act, separate from the March 2011 forced leave. *See*

*Morgan*, 536 U.S. at 114 (discrete acts include acts such as termination, failure to promote, denial of transfer, and refusal to hire). The fact that Sams did not timely bring an EEOC charge for the March 2011 act does not bar her from bringing a claim based on the discrete act of alleged discrimination that occurred in March 2012. *Morgan*, 536 U.S. at 113 ("Each discrete discriminatory act starts a new clock . . . . The existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed."); *Stuart v. Local 727, Int'l Bhd. of Teamsters*, – F.3d –, 2014 U.S. App. LEXIS 21710, *8 (7th Cir. Nov. 14, 2014) ("There is no rule that a plaintiff who has been repeatedly discriminated against by her employer cannot challenge any of the discriminatory acts under Title VII unless she files her EEOC charge within 300 days after the first such act. That would be an absurd rule.") (internal citation omitted). The cases cited by defendants do not involve independent discriminatory acts, and are thus not to the contrary. *See, e.g.*, *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 ("An applicant does not have to sue about the first wrong to be entitled to contest a second.").

So a claim for discrimination based on the March 2012 incident would be timely brought. To succeed on such a claim, Sams will have to show that the March 2012 incident was "independently discriminatory," although the March 2011 incident may be used as "background evidence." *Morgan*, 536 U.S. at 113. Although Sams's complaint does not contain a great amount of detail concerning the March

2012 incident,[8] the March 2011 allegations are relevant for background, and the complaint should be liberally read (because of the procedural posture and Sams's *pro se* status). So read, Sams alleges that she asked to be reinstated in March 2012 but her request was denied for discriminatory reasons—her race or disability, or both. Some factual development may show that not to be the case, but Sams has alleged enough at this point.

### C. Claim Under 42 U.S.C. § 1981

42 U.S.C. § 1981 guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts," regardless of race. It proscribes racial discrimination in contractual relationships, including employment. *Smith v. Bray*, 681 F.3d 888, 892 (7th Cir. 2012).[9] There is a private right of action for violations committed by private actors, but another section—section 1983—provides "the exclusive remedy for violations of § 1981 committed by state actors." *Campbell v. Forest Preserve Dist.*, 752 F.3d 665, 671 (7th Cir. 2014). Under § 1983, to state a claim for a violation of the equal right to make and enforce contracts against a state entity, a plaintiff must allege that the violation was caused by the state entity's "custom or policy" (within the meaning of *Monell v. New York Department of Social Services*, 436 U.S. 658, 694 (1978)).

---

[8] Sams's complaint says the following: "I requested to be returned to work in 2012 but was told I could not work because of my medical status. There is nothing in any files with the city stating why I am not permitted to work." TAC at 7, ¶ 3. Sams's EEOC charge says that "[o]n or around March 12, 2012, I was not allowed to return to work." TAC at 9.

[9] Because § 1981 prohibits discrimination only on racial grounds, Sams may not use § 1981 to pursue claims of disability discrimination.

11

*Campbell*, 752 F.3d at 669; *Hall v. Village of Flossmoor*, 520 Fed.Appx. 468, 473 (7th Cir. 2013). Sams makes no such allegation, so does not state a claim under 42 U.S.C. §§ 1981 or 1983 against the City.

Sams also sued defendant Hemmerling in her individual capacity. Individuals can be held liable under § 1981, if they "participated in" the adverse employment action against the plaintiff. *Smith v. Bray*, 681 F.3d at 896–97 & n.2. A claim against a defendant in her individual capacity is not subject to *Monell's* custom-or-policy requirement. *See Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 467 (7th Cir. 2001). Defendants move to dismiss the § 1981 claim against Hemmerling, arguing that the limitations period is two years, and has expired. [48] at 11.[10] I reject defendants' argument because I find that the applicable limitations period is four years, not two.[11]

Under 28 U.S.C. § 1658, a four-year limitations period applies to causes of action "arising under an Act of Congress enacted" after December 1, 1990. A cause of action "arises under" such an enactment "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). For § 1981, claims based on post-formation conduct (such as failure-to-promote or wrongful termination) were made possible by

---

[10] Unlike claims under Title VII and the ADA, § 1981 claims do not require plaintiffs to first file charges with the EEOC. *See Tyson v. Gannett Co.*, 538 F.3d 781, 783 (7th Cir. 2008).

[11] Even if the limitations period was two years, Sams's claim would be timely as it concerns the March 2012 allegations, for the reasons discussed in section III.B.2.

12

the Civil Rights Act of 1991, and are thus subject to the four-year limitations period. *Jones*, 541 U.S. at 382–83; *Rainey v. UPS*, 543 Fed.Appx. 606, 608 (7th Cir. 2013).

But government employees sued in their individual capacities are state actors for purposes of § 1981, so such claims must be brought under § 1983. *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002), abrogated on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Harrison v. Ill. Dep't of Transp.*, 2011 U.S. Dist. LEXIS 66145, *15 n.2 (N.D. Ill. 2011). I am not aware of any Seventh Circuit case explicitly deciding—one way or another—whether a claim brought against a state actor under § 1983, for a post-formation violation of the right secured by § 1981, is governed by the four-year federal limitations period. Applying the four-year period is consistent with *Jones*, because such a claim was "made possible" by the Civil Rights Act of 1991: prior to that act, a claim based on post-formation conduct could not be brought, regardless of whether the defendant was a state actor. Using this reasoning, the Eleventh Circuit held that the four-year period applies. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336 (11th Cir. 2008).[12] And in *Campbell*, without deciding the issue, the Seventh Circuit suggested the same. 752 F.3d at 668 ("Of course, even if § 1983 provides the exclusive remedy, his claim is still based on a violation of § 1981 that could not have occurred before the Civil Rights Act of 1991 amended that statute. Thus, one might argue that [the] four-year statute of limitations should apply regardless."). Furthermore, without

---

[12] The Fifth Circuit also suggested that the four-year period would apply to a claim based on post-formation conduct, but the case before it involved only pre-formation conduct. *Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed.Appx. 363, 368 (5th Cir. 2008).

13

discussing the issue, the Seventh Circuit has twice applied the four-year limitations period to § 1981 claims brought against state entities. *Hall*, 520 Fed.Appx. at 473; *Moore v. City of Chicago*, 126 Fed.Appx. 745, 747 (7th Cir. 2005).[13] In view of these opinions, I find that the four-year limitations period of 28 U.S.C. § 1658 applies to Sams's claim against Hemmerling under 42 U.S.C. §§ 1981 and 1983. Sams's claim is therefore timely.

Defendants also move to dismiss the claim against Hemmerling because the complaint does not make clear that Hemmerling, as opposed to someone else, is the unnamed director of the Medical unit. [48] at 12. But defendants' brief demonstrates that they understand Hemmerling is the subject of the allegations. And Sams made that clear in open court, with counsel for Hemmerling present. [43] at 5. Sams also made it clear in her response brief [55]. Sams will be held to these representations—she will not be allowed to later argue that the allegations relate to some other, as yet unnamed, individual. But given that all parties are aware of Hemmerling's alleged role, I will not dismiss the claim for failing to make her identity explicit in the complaint.

Defendants further argue that, even assuming that Hemmerling is the unnamed director of the Medical unit, "the sole allegation directed to her" is that she did not want Sams in the Medical unit. [48] at 12. Not so. Sams also alleges that Hemmerling threatened to "make certain" that Sams would be placed on leave if Sams did not voluntarily opt out of the Medical unit. TAC at 7, ¶ 3. Sams further

---

[13] In *Moore*, the City conceded that the four-year period applied. 126 Fed.Appx. at 747.

alleges that Hemmerling falsely filled out a form indicating that Sams was unfit to work. TAC at 7, ¶ 3. And Sams alleges that Hemmerling denied a second, similarly situated African-American officer a job in the Medical unit, but accepted two white officers who were less experienced than Sams. TAC at 7, ¶ 3. Finally, Sams alleges that Hemmerling ignored City policy by placing Sams on medical leave without obtaining a doctor's opinion. TAC at 7, ¶ 3. Sams clearly makes more than a "sole" allegation against Hemmerling. These same allegations defeat defendants' argument that Sams failed to allege that Hemmerling had sufficient decision-making authority. *See* [48] at 12. Once developed, the facts may reveal that Hemmerling was not a decision-maker, and thus is not liable. For now, the complaint adequately alleges that Hemmerling had that role.

Finally, defendants state that "plaintiff has failed to allege a constitutional violation to support a section 1983 claim," but a § 1983 claim can be based on a violation § 1981 and that is what Sams has alleged. Accordingly, the claim against Hemmerling, properly understood as a § 1983 action against Hemmerling individually for discriminating against Sams in March 2011 on account of race, is not dismissed.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss [48] is granted in part and denied in part. Sams has stated a claim under § 1983 against Hemmerling. Sams has not stated a claim under §§ 1981 or 1983 against the City, because she has not alleged a discriminatory custom or policy. Sams has not stated a claim for retaliation, because no such allegations were in her EEOC charge.

15

Sams has stated claims for discrimination under Title VII and the ADA, but those claims must be based on the March 2012 failure to reinstate. The March 2011 forced leave can be used as background evidence, but cannot itself state a claim because Sams waited too long after March 2011 to file her EEOC charge. Sams has been given leave to file several amended complaints, and based on the most recent allegations, amendment would be futile with respect to the claims now dismissed. Therefore, this case shall proceed solely on the surviving claims.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 11/25/14